UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
SEP 4 2024
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______________ DEPUTY CLERK

| | | |
|---|---|---|
| **RIKKIE GONZALEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civ. Action No. 1:24-cv-00880-DII** |
| | § | |
| **TEXAS TAXPAYERS AND RESEARCH,** | § | |
| | § | |
| **Defendant.** | § | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiff, Rikkie Gonzalez ("Plaintiff"), by and through the undersigned counsel, and files this response to Defendant's Motion to Compel Arbitration.

## I. INTRODUCTION

1. Plaintiff opposes Defendant's Motion to Dismiss on the grounds that Plaintiff has sufficiently pleaded all claims, and the motion lacks merit both legally and factually. Plaintiff contends that the Complaint sets forth plausible claims for relief, including those under Title VII, the Texas Commission on Human Rights Act (TCHRA), and Texas common law. Plaintiff further argues that the allegations made in the Complaint are well-supported, satisfy the pleading standards under the Federal Rules of Civil Procedure, and that any factual disputes raised by Defendant should be resolved through discovery rather than dismissal at this early stage.

## II. NATURE AND STAGE OF THE PROCEEDING

2. This case involves a lawsuit brought by Plaintiff Rikkie Gonzalez against her former employer, Texas Taxpayers and Research Association (TTARA), and DOES 1-25, under multiple

employer, Texas Taxpayers and Research Association (TTARA), and DOES 1-25, under multiple causes of action, including discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, Chapter 21 of the Texas Labor Code (TCHRA), and Section 1981 of the Civil Rights Act. Additionally, the Plaintiff alleges defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress under Texas common law.

3. Plaintiff initially filed this action in Travis County, Texas, on July 1, 2024. The Defendant subsequently removed the case to the United States District Court for the Western District of Texas, Austin Division. In response to Plaintiff's Petition, the Defendant has filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the Plaintiff's claims fail to state a cause of action upon which relief can be granted.

4. The Plaintiff now opposes the Defendant's Motion to Dismiss, arguing that the Defendant's grounds for dismissal are unfounded and that the case should proceed to discovery and trial. The Court has yet to rule on the Defendant's motion, and the Plaintiff submits this opposition to demonstrate the merit of her claims and the insufficiency of the Defendant's arguments for dismissal.

## III. RELEVANT FACTUAL BACKGROUND

5. Plaintiff, Rikkie Gonzalez, began her employment with the Texas Taxpayers and Research Association (TTARA) in or about October 2022 as an Office Manager. Throughout her tenure, she consistently demonstrated dedication and excellence in her work, particularly under the direction of the former president of the organization. Notably, Ms. Gonzalez, who is of Mexican descent, and another African American employee were the only non-Caucasian employees within the company, highlighting the racial diversity challenges within the organization.

6. Plaintiff worked under a de facto employment contract, receiving a base salary for her work. TTARA is an organization structured with a board of directors consisting of 63 individuals, an

executive committee of 23 professionals, an office staff team of 8, and over 215 total members. These individuals collectively work towards the organization's goals and objectives, contributing to its operations in various capacities.

7. In July 2023, a significant leadership change occurred when the previous president retired, and Jennifer Rabb, a Caucasian individual, assumed the role of President. From the outset of her presidency, Ms. Rabb embarked on an unjust vendetta against Ms. Gonzalez. This vendetta was characterized by harassment, discrimination, and favoritism towards other Caucasian employees. Ms. Rabb's hostility became evident during her initial interactions with Ms. Gonzalez, where she displayed coldness and lack of receptiveness, particularly during a welcoming lunch where she notably isolated Ms. Gonzalez.

8. Ms. Rabb further exacerbated the situation by visiting Ms. Gonzalez's desk and explicitly stating her intent to hire someone new because, in her words, "I need to hire somebody who really knows what they are doing." Despite Ms. Gonzalez's exemplary performance record and lack of prior complaints, Ms. Rabb systematically stripped her of her responsibilities, reassigning them to a newly hired younger Caucasian woman, Alexandra Bello, who lacked the necessary experience and qualifications for the role. Plaintiff had to even teach and explain some basic workplace items to Alexandra Bello up to and including what an account even is.

9. Over time, Ms. Gonzalez's responsibilities were completely transferred to Ms. Bello and another newly hired Caucasian woman named Catherine, including tasks traditionally associated with the receptionist position. This indicated a clear racial bias, as Ms. Rabb appeared to disfavor having a person of Mexican descent in a prominent front-facing role within the organization.

10. In September 2023, just one month short of her one-year anniversary and eligibility for a bonus, Ms. Gonzalez was wrongfully terminated under the fabricated pretext of "untrustworthiness." Ms. Rabb seized upon Plaintiff's secondary job that Ms. Gonzalez held during

off-hours, despite there being no company policy prohibiting such employment, as an excuse to justify her termination. As one of her random excuses to cover up her discrimination, Rabb stated that Plaintiff having a secondary employment made her untrustworthy. Additionally, Ms. Rabb later indicated that Plaintiff was not performing the duties which were specifically stripped away from her, and she was specifically instructed not to do. This termination followed months of attempts by Ms. Rabb to find an excuse to dismiss Ms. Gonzalez from her position.

11. Adding further injury, when Ms. Gonzalez applied for unemployment benefits, her application was denied due to unsubstantiated allegations of theft made by the Defendant. These baseless accusations lacked any specific details and clearly served as an act of defamation, driven by Ms. Rabb's racial bias against Ms. Gonzalez. Additionally, Ms. Rabb attempted to retroactively justify the termination by citing Plaintiff's activity of making Instagram videos during her unpaid lunch breaks, despite the lack of any prior warnings that such actions could be deemed a terminable offense.

12. This sequence of events, characterized by racial discrimination, wrongful termination, and defamatory actions, forms the basis of Plaintiff's claims against TTARA.

## III. ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

### A. Issues to Be Ruled Upon

13. The Court is called upon to determine the following issues in this case:

a) Whether Plaintiff Rikkie Gonzalez has sufficiently stated claims upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure for:

- Discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, Chapter 21 of the Texas Labor Code (TCHRA), and Section 1981 of the Civil Rights Act;
- Defamation, Defamation per se, intentional infliction of emotional distress, and negligent infliction of emotional distress under Texas common law;

b) Whether the factual allegations, when taken as true and viewed in the light most favorable to the Plaintiff, plausibly give rise to an entitlement to relief under the legal theories asserted.

**B. Standard of Review**

14. In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. The motion should only be granted if the complaint fails to state a claim that is plausible on its face. A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

15. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

16. Moreover, the Court should not dismiss a claim under Rule 12(b)(6) simply because it appears that recovery is remote or unlikely. (Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Rather, the issue is whether the plaintiff is entitled to offer evidence to support the claims, not whether the plaintiff will ultimately prevail on those claims.

## V. SUMMARY OF MOTION TO DISMISS

17. In its Motion to Dismiss, Defendant Texas Taxpayers and Research Association (TTARA) asserts that Plaintiff Rikkie Gonzalez's claims should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant raises several key arguments in support of its motion:

a) **Lack of Employer Status under Title VII and TCHRA**: Defendant argues that TTARA does not meet the numerosity requirement necessary to be classified as an "employer" under Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act (TCHRA). Specifically, TTARA claims that it employs only seven individuals, which is below the fifteen-employee threshold mandated by these statutes. As a result, Defendant contends that Plaintiff's discrimination, retaliation, and hostile work environment claims under these statutes must be dismissed.

b) **Preemption of Intentional Infliction of Emotional Distress (IIED) Claims**: Defendant argues that Plaintiff's IIED claim is preempted by Title VII and the TCHRA. Courts have consistently held that when a plaintiff's emotional distress claims arise from the same facts as their discrimination claims, those claims are preempted and must be dismissed.

c) **No Cause of Action for Negligent Infliction of Emotional Distress (NIED) in Texas**: Defendant contends that Texas law does not recognize a cause of action for NIED. Consequently, this claim must also be dismissed.

d) **Insufficient Pleading of Defamation Claims**: Defendant contends that Plaintiff's defamation and defamation per se claims must be dismissed due to insufficient particularity. The motion argues that Plaintiff fails to identify specific defamatory statements, the

individuals who made those statements, and to whom they were communicated. Furthermore, Defendant claims that any statements made by TTARA officials are protected by a qualified privilege, which has not been overcome by allegations of actual malice.

18. Based on these arguments, the Defendant requests that the Court dismiss all of Plaintiff's claims with prejudice.

## VI. ARGUMENTS AND AUTHORITIES

### A. Plaintiff Adequately Pleads that TTARA is an "Employer" under Title VII and Texas Law

19. Defendant argues that TTARA does not meet the numerosity requirement necessary to be classified as an "employer" under Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act (TCHRA), contending that it employs only seven individuals. This argument is flawed for several reasons, which can be grouped into procedural and substantive arguments.

**PROCEDURAL ARGUMENTS**

**i. The Plaintiff Is Not Required to Prove the Exact Number of Employees at the Pleading Stage**

20. At the motion to dismiss stage, courts are guided by the principle that plaintiffs are not required to prove their case in the complaint but only to allege enough facts to make their claims plausible. The Supreme Court is *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), held that an employment discrimination complaint need not contain specific facts stablishing a prima facie case. Instead, the complaint must only provide a short and plain statement showing that the pleader is entitled to relief. The number of employees a defendant has is typically a factual matter to be resolved during discovery, not on a motion to dismiss.

21. The Fifth Circuit has also recognized that whether an entity meets the statutory definition of

an employer under Title VII is a factual issue, inappropriate for resolution on a motion to dismiss. In *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 185), the court emphasized that issues concerning the number of employees and the application of Title VII are generally factual determinations. Courts regularly deny motions to dismiss on similar grounds, acknowledging that the exact number of employees is a fact-intensive inquiry that must be resolved through discovery. See *Cruz v. Aramark Servs., Inc.*, 213 F. Supp. 2d 135, 139 (D.P.R. 2002) (denying a motion to dismiss based on numerosity and holding that the determination of whether the employer meets the statutory threshold requires factual development).

**ii. The Integrated Enterprise Theory and Joint Employer Doctrine May Apply**

22. Even if TTARA alone does not employ fifteen or more employees, it may still be classified as an "employer" under Title VII and TCHRA through the integrated enterprise theory or joint employer doctrine. Under these doctrines, courts may consider multiple entities together as a single employer if they share interrelated operations, common management, centralized control of labor relations, and common ownership or financial control.

23. The Fifth Circuit has acknowledged that under certain circumstances, related entities can be aggregated to meet the employee threshold. In *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983), the court set forth a test for determining whether separate entities should be considered a single employer under Title VII. This test examines the degree of interrelation between operations, common management, centralized control of labor relations, and common ownership or financial control. See also *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (noting that the "control" factor is the most critical in determining whether a joint employer relationship exists).

24. In the present case, discovery is necessary to determine the extent of TTARA's connections with any related entities, including potential joint employers or subsidiaries that may be operating

under the same umbrella. Plaintiff's allegations imply that TTARA is a significant organization with numerous contractors and possibly affiliated entities. It is premature to dismiss these claims without allowing discovery into whether TTARA functions as part of an integrated enterprise that collectively meets the fifteen-employee threshold.

**iii. Counting Employees for Title VII and TCHRA Purposes Is a Fact-Intensive Inquiry**

25. The determination of whether an entity meets the fifteen-employee threshold is not merely a matter of counting full-time employees on payroll. Courts have consistently held that part-time employees, temporary workers, and other individuals working for the entity can be counted towards the fifteen-employee minimum if they meet certain criteria. In *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207-8 (1997), the Supreme Court clarified that the test for determining who is an employee under Title VII is based on the "payroll method," meaning that any individual on the employer's payroll during the relevant period is counted as an employee.

26. Furthermore, courts have recognized that independent contractor and other non-traditional workers can sometimes be counted as employees for Title VII purposes if they function as employees rather than independent contractors. The Fifth Circuit has utilized the "economic realities" test to determine whether an individual is an employee or an independent contractor. In *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272-73 (5th Cir. 1988), the court noted that factors such as the degree of control exercised by the employer, the extent to which the worker's services are an integral part of the employer's business, and the permanency of the relationship must be considered in determining employee status.

27. Therefore, it is entirely plausible that TTARA, when counting all relevant personnel, including part-time, temporary, and potentially misclassified workers, does meet the fifteen-employee threshold. Discovery is required to fully explore these issues and determine the true number of employees.

**iv. The "Single Employer" Test May Also Be Relevant**

28. In addition to the integrated enterprise theory, the "single employer" test, which examines whether two nominally separate entities should be treated as one employer for Title VII purposes, may apply. Factors considered under this test include the commonality of management, interrelation of operations, centralized control of labor relations, and degree of common ownership or financial control. *McKenzie v. Davenport-Harris Funeral Home*, 843 F.2d 930, 933 (11th Cir. 1987). If TTARA is found to operate in conjunction with other entities or affiliates, it may well meet the employee threshold under this test as well.

**v. The Timing and Duration of Employment Are Key Considerations**

29. Another critical aspect is that the fifteen-employee threshold applies only to weeks in which an employer had fifteen or more employees for each working day. The Supreme Court in *Walters* clarified that employees who are on the payroll during the relevant period, even if they did not work every day or were on leave, should still be counted. Plaintiff's complaint suggests that TTARA's employment practices, including any hiring of temporary or seasonal workers, must be thoroughly examined to ensure accurate counting of employees during the relevant time frame.

**<u>SUBSTANTIVE ARGUMENTS</u>**

**i. TTARA Qualifies as an "Employer" Under Title VII and TCHRA, and Its Board Members, Executive Committee Members, and Other Personnel Should Be Counted as Employees**

30. Defendant's argument that TTARA is not an "employer" because it employs only seven individuals and excludes its board and executive committee members is flawed. Defendant's narrow interpretation fails to account for the comprehensive legal framework that governs employee status under federal and state law.

**ii. The Common-Law Control Test and Economic Realities Test Support Including TTARA's**

**Board Members and Executive Committee Members as Employees.**

31. Defendant asserts that TTARA's board members and executive committee members cannot be considered employees because they do not perform the traditional duties of employees. However, this argument misapplies the common-law control test and ignores the economic realities test, both of which are crucial in determining employee status under Title VII and the TCHRA.

32. The Supreme Court in *Clakamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003), established that the common-law element of control is the principal guidepost in determining whether an individual is an employee. The Court outlined six factors, which include whether the organization can hire or fire the individual, whether the organization supervises the individual's work, whether the individual shares in the profits, losses, and liabilities of the organization. The determination of employee status is a fact-intensive inquiry that requires a thorough examination of the specific roles and responsibilities of the individuals in question.

33. Defendant fails to address the significant degree of control that TTARA likely exercises over its board and executive committee members, which could render them employees under the common-law test. These individuals, as part of their governance and oversight roles, likely participate in day-to-day operations, influence decision-making, and execute tasks that go beyond mere advisory functions. Courts have recognized that individuals who exercise substantial control over operations, even in a governance role, can be deemed employees. See *Roden v. Tex. Mun. Police Ass'n, Inc.*, 2013 WL 12121109, at *7-8 (W.D. Tex. Mar. 25, 2013) (considering the extent to which board members perform operational duties in determining employee status).

34. Moreover, the Fifth Circuit has applied the economic realities test in employment discrimination cases, considering whether individuals are economically dependent on the organization and whether their activities are integral to the business. See *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). TTARA's board members and executive committee

members, who are integral to the association's operations and governance, may meet this test. Their compensation, decision-making power, and the responsibilities they bear could indeed reflect an employer-employee relationship, specifically if they are compensated or derive significant benefits from their roles. Thus, these individuals should be considered employees for the purposes of Title VII and TCHRA.

**iii. Precedent Supports Counting Individuals Who Play a Significant Role in Organizational Operations as Employees**

35. Defendant's reliance on *Clackamas* and other cases to argue that board members are not employees is misplaced, particularly when considering the broader body of case law that supports the inclusion of individuals who perform substantial operational duties in employee counts. The courts have consistently held that individuals who influence or control significant aspects of an organization's operations, policies, or governance can be classified as employees.

36. Additionally, the Fifth Circuit in *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 439 (5th Cir. 2013), emphasized that the functional aspects of the relationship, including the extent of control and the nature of the tasks performed, are critical in determining whether someone is an employee. This precedent supports the inclusion of TTARA's board members and executive committee members as employees, particularly if they are actively involved in operational decisions, perform significant duties, or receive compensation beyond mere reimbursement of expenses.

**iv. Plaintiff's Allegations Support a Plausible Claim That TTARA Has Fifteen or More Employees, Including Board and Executive Committee Members**

37. Plaintiff has plausibly alleged that TTARA's board members, executive committee members, and other associated personnel should be counted as employees under Title VII and TCHRA. Plaintiff's allegations indicate that these individuals contribute to the operations of the organization, exercise control over its activities, and are integral to its functioning. As such, they

should be included in the employee count, potentially bringing TTARA's total number of employees to the requisite fifteen or more for coverage under these statutes.

38. Defendant's argument that Plaintiff fails to plead specific facts regarding control or other aspects of the employment relationship is not sufficient grounds for dismissal at the pleading stage. Under Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff need only provide a "short and plain statement of the claim" that shows entitlement to relief. The Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), made clear that detailed factual allegations are not required at the pleading stage, particularly in employment discrimination cases where much of the relevant information is within the control of the defendant and will be uncovered during discovery.

**v. The Contractual Relationship with ADP Does Not Negate TTARA's Status as an Employer**

39. Defendant's arguments that TTARA's contractual relationship with ADP TotalSource, which serves as the employer of record for payroll purposes, negates its status as an employer is also without merit. Under both federal and Texas law, an entity can still be considered a common-law employer even if it uses a third-party service for payroll and benefits administration. The critical question is whether TTARA retains control over the employment relationship, including hiring, supervision, and termination decisions.

40. The Fifth Circuit has addressed similar arrangements and held that the use of a third-party payroll service does not preclude an entity form being an employer under Title VII if it maintains control over the employment conditions. See *Bloomberg L.P. v. Bd. of Govs. of the Fed. Reserve Sys.*, 649 F.3d 651, 657 (D.C. Cir. 2011) (recognizing that the entirety that controls the terms and conditions of employment is the employer, even if another entity handles payroll). TTARA's retention of all responsibilities for hiring, supervision, and termination, as noted by Defendant, supports the conclusion that it is indeed the common-law employer of its employees, including any

individuals performing substantial duties as part of its board or executive committee.

**Conclusion**

41. In sum, TTARA's argument that it does not meet the employee threshold under Title VII or TCHRA is fundamentally flawed. The relevant legal test for determining employee status—including the common-law control test and the economic realities test—support the inclusion of TTARA's board members, executive committee members, and other associated personnel as employees. Plaintiff has adequately pleaded facts that, if proven, demonstrate that TTARA employs fifteen or more individuals as required for coverage under Title VII and TCHRA. Therefore, Defendant's motion to dismiss on this ground should be denied, and Plaintiff should be allowed to proceed to discovery to further substantiate her claims.

**4. Plaintiff's Intentional Infliction of Emotional Distress Claim Is Not Preempted by Title VII or the TCHRA**

46. Defendant asserts that Plaintiff's Intentional Infliction of Emotional Distress (IIED) claim is preempted by Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act (TCHRA), arguing that when emotional distress claims arise from the same facts as discrimination claims, they are preempted. However, this argument is fundamentally flawed for several reasons, and it does not warrant dismissal of Plaintiff's IIED claim.

**A. Preemption Does Not Apply When the IIED Claim Is Based on Conduct That Is Independent of Discrimination Claims**

47. While it is true that courts have sometimes found IIED claims preempted by statutory remedies under Title VII or the TCHRA, preemption only applies when the IIED claim is entirely duplicative of the discrimination claim. Courts have consistently held that where the IIED claim is

based on conduct that is independent of, or goes beyond, the conduct forming the basis of the discrimination claim, preemption does not apply. In *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004), the Texas Supreme Court noted that an IIED claim is a "gap-filler" tort that was never intended to supplant or duplicate statutory remedies but can be pursued in cases where other remedies are unavailable or where the defendant's conduct is so extreme and outrageous that it goes beyond the bounds of ordinary workplace disputes.

48. In the present case, Plaintiff Rikkie Gonzalez's IIED claim is based not only on the discriminatory conduct she experienced but also on the egregious and outrageous conduct of TTARA's President, Jennifer Rabb, that caused severe emotional distress independent of the discrimination. Plaintiff alleges that Rabb's actions included a systematic campaign of harassment, isolation, and public humiliation designed to force her out of her job, which culminated in her termination. These actions, which included the removal of job responsibilities, unreasonable performance demands, and the use of public reprimands to undermine her authority and reputation, constitute conduct that is extreme and outrageous, and far beyond the scope of ordinary employment disputes. This type of conduct is precisely what the IIED tort is designed to address. As such, the IIED claim should not be dismissed on preemption grounds.

**B. Courts Have Recognized IIED Claims When the Conduct Is Egregious and Distinct from Discrimination Claims**

49. Numerous courts have upheld IIED claims in employment cases where the conduct was found to be sufficiently outrageous and distinct from the plaintiff's discrimination claims. For instance, in *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1276-77 (S.D. Tex. 1995), the court allowed an IIED claim to proceed where the plaintiff alleged that he was subjected to severe harassment and threats by his supervisors, which were not solely tied to his discrimination claim. The court recognized that while Title VII and TCHRA provide remedies for discrimination, they do not preempt

all tort claims arising out of an employment relationship, particularly where the alleged conduct is extreme and goes beyond the statutory claims.

50. Similarly, in *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex. 1993), the Texas Supreme Court held that IIED claims are viable when the defendant's conduct is so outrageous that it exceeds all possible bounds of decency in a civilized society. The conduct Plaintiff Gonzalez experienced, as detailed in the complaint, rises to this level. The calculated and malicious manner in which Rabb and TTARA sought to isolate, demoralize, and ultimately remove Gonzalez from her position caused significant emotional distress and is actionable under IIED.

**C. Preemption Is Not Absolute: IIED Claims Can Coexist with Statutory Claims**

51. The argument that IIED claims are always preempted by Title VII or TCHRA is overly simplistic and incorrect. Courts recognize that while Title VII and TCHRA provide comprehensive remedies for discrimination, they do not displace state law claims like IIED that address separate, though related, harms. In *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 239 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), the court rejected the argument that an IIED claim was preempted by TCHRA, noting that the IIED claim addressed different conduct and harm than the discrimination claim.

52. Furthermore, in *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999), the Texas Supreme Court upheld an IIED claim where the conduct, although arising in the employment context, was independently actionable due to its extreme and outrageous nature. The Bruce case underscores the principle that statutory remedies do not preclude tort claims like IIED when the defendant's conduct is egregious enough to warrant separate redress.

**D. Discovery Is Necessary to Fully Understand the Extent of the Outrageous Conduct**

53. The determination of whether conduct is sufficiently extreme and outrageous to support an IIED claim is typically a fact-specific inquiry that requires full development of the factual record.

Courts are hesitant to dismiss IIED claims at the pleading stage because the full scope of the defendant's conduct is often not fully apparent until discovery is completed. As the Fifth Circuit noted in *Hogan v. AT&T, Inc.*, 917 F. Supp. 1275, 1280 (S.D. Tex. 1994), "whether a defendant's conduct is extreme and outrageous is initially a question of law, but if reasonable minds could differ, it is for the jury to decide."

54. In this case, Plaintiff has alleged a pattern of extreme and outrageous conduct by TTARA and its President, which should not be dismissed without allowing discovery to fully explore the extent of this behavior. Dismissing the IIED claim at this stage would be premature and deny Plaintiff the opportunity to develop her case.

**Conclusion**

55. For the reasons stated above, Defendant's argument that Plaintiff's IIED claim is preempted by Title VII and the TCHRA is without merit. Plaintiff's IIED claim is based on conduct that is distinct from her statutory discrimination claims and alleges behavior that is extreme and outrageous, thus falling within the scope of IIED under Texas law. The motion to dismiss this claim on the grounds of preemption should therefore be denied, allowing the Plaintiff the opportunity to prove her case.

**5. Plaintiff's Negligent Infliction of Emotional Distress Claim Is Viable Under Texas Law**

56. Defendant asserts that Plaintiff's Negligent Infliction of Emotional Distress (NIED) claim should be dismissed because Texas does not recognize NIED as a separate cause of action. While it is generally true that Texas courts have been reluctant to recognize NIED as an independent tort, this argument oversimplifies the legal landscape and overlooks key nuances that may apply to the facts of this case.

**A. The General Rule Regarding NIED in Texas**

57. The Texas Supreme Court has generally held that Texas does not recognize a cause of action

for Negligent Infliction of Emotional Distress in the absence of physical injury to the plaintiff or some other legally recognized duty owed to the plaintiff. In *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993), the court expressly declined to adopt a general cause of action for NIED, limiting recovery for emotional distress to situations where the distress is a foreseeable result of the defendant's breach of some other duty, or where the emotional distress is accompanied by a physical injury.

58. However, the *Boyles* decision and its progeny do not categorically preclude recovery for emotional distress in all negligence cases. Instead, the court made clear that emotional distress damages are available when they are parasitic to other torts or where there is an independent legal duty breached that results in emotional harm. For example, in *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 653 (Tex. 1987), the Texas Supreme Court allowed recovery for mental anguish where the defendant's negligent breach of a duty owed directly to the plaintiff caused severe emotional distress, even in the absence of physical injury.

**B. Emotional Distress Claims May Be Viable When Based on a Breach of a Recognized Duty**

59. In situations where the defendant owes a specific duty to the plaintiff, and the breach of that duty results in severe emotional distress, Texas courts have been willing to consider claims for emotional distress damages. For example, in *City of Tyler v. Likes*, 962 S.W.2d 489, 495-96 (Tex. 1997), the court noted that emotional distress damages may be recoverable when the distress is a foreseeable consequence of the defendant's negligence and where there is a recognized duty of care.

60. The key issue, therefore, is whether TTARA owed a duty to Plaintiff Rikkie Gonzalez that was breached in a manner that foreseeably caused her severe emotional distress. Plaintiff's claim is not based on a standalone NIED cause of action but rather on the breach of a duty TTARA owed to her as an employer, which resulted in emotional distress. For instance, Texas law recognizes a duty of care in the handling of sensitive information, as well as in maintaining a workplace free from conditions that would foreseeably cause severe emotional harm. If TTARA's actions, such as

mishandling confidential information or creating an intolerable work environment, breached such a duty, Plaintiff's claim for emotional distress damages could be viable.

**C. The Facts of This Case May Justify an Exception to the General Rule**

61. While Texas law does not broadly recognize NIED as an independent tort, courts have acknowledged exceptions in cases where the defendant's conduct is particularly egregious or where the emotional distress results from a duty arising out of the parties' relationship. In *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991), the Fifth Circuit allowed recovery for emotional distress in the context of employment, where the employer's conduct was deemed intentional and outrageous, leading to severe emotional distress.

62. Similarly, in *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 906 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.), the court recognized the possibility of recovering emotional distress damages in the context of employment where the employer's conduct was particularly abusive or negligent. The factual circumstances of this case—where Plaintiff was allegedly subjected to severe harassment, unjust termination, and the mishandling of her private health information—may warrant such an exception.

**D. Dismissal Is Premature Without a Full Examination of the Facts**

63. At the motion to dismiss stage, it is premature to dismiss Plaintiff's emotional distress claims without a full examination of the facts. The nature of TTARA's conduct, the existence of any duties owed to Plaintiff, and the foreseeability of the emotional distress caused are all issues that require further factual development. Courts are reluctant to dismiss claims where there is a plausible basis for recovery under Texas law, especially in complex employment contexts where emotional harm is a foreseeable result of the defendant's conduct. In *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993), the Texas Supreme Court recognized the importance of allowing claims to proceed where the plaintiff alleges severe emotional distress resulting from particularly egregious conduct, even in cases

where the specific tort is not well-established.

**Conclusion**

64. For the reasons stated above, Defendant's argument that Plaintiff's Negligent Infliction of Emotional Distress claim is not recognized under Texas law is overly simplistic and fails to consider the potential exceptions and nuances that may apply. While NIED may not be generally recognized as an independent tort, Plaintiff's claim is based on TTARA's breach of a duty owed to her, which foreseeably caused severe emotional distress. This issue is fact-intensive and should not be resolved at the motion to dismiss stage. Accordingly, the Defendant's motion to dismiss this claim should be denied.

**6. Plaintiff Has Adequately Pleaded Defamation and Defamation Per Se, and the Allegations Are Sufficiently Particular**

**1. The Statements Described in Plaintiff's Petition Are Pleaded with Sufficient Particularity**

65. Defendant argues that Plaintiff's defamation claims should be dismissed because the statements described in the Petition allegedly lack the particularity required to state a claim for defamation or defamation per se under Texas law. Specifically, Defendant contends that Plaintiff failed to identify the specific defamatory statements, the individuals who made those statements, and to whom they were communicated. However, this argument ignores the established pleading standards and the sufficiency of Plaintiff's allegations in the context of a defamation claim.

**A. Texas Law Does Not Require the Plaintiff to Plead Defamation Claims with Hyper-Specific Detail at the Pleading Stage**

66. Under Texas law, to state a claim for defamation, a plaintiff must allege (1) the defendant published a false statement of fact, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in cases not involving defamation per se. See *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). The Texas Supreme Court has clarified that defamation claims do

not require the plaintiff to detail every word of the defamatory statement in the petition, especially when those details are within the control of the defendant and may require discovery to uncover.

67. Rather, the plaintiff must allege enough facts to provide the defendant with fair notice of the claim and the defamatory statements at issue. See *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (noting that a complaint must provide enough detail to give the defendant fair notice of the claim and the grounds upon which it rests).

68. Plaintiff Rikkie Gonzalez's Petition meets this standard by alleging specific instances where Defendant's representatives, including TTARA President Jennifer Rabb, made false and defamatory statements that directly harmed Plaintiff's professional reputation. Plaintiff alleges that these statements included false accusations of theft, dishonesty, and poor job performance, which were communicated to key stakeholders, including board members, colleagues, and even the Texas Workforce Commission (TWC). These allegations are sufficient to put the Defendant on notice of the specific defamatory conduct at issue.

**B. The Context of the Statements and the Circumstances of Publication Are Adequately Pleaded**

69. Plaintiff has provided enough context surrounding the defamatory statements to satisfy the particularity requirement at the pleading stage. Courts recognize that defamation often involves statements made in private or within the scope of employment, where the exact wording and the identity of the recipients may not be fully known to the plaintiff at the outset. See *Doe v. United States*, 853 F.3d 792, 798 (5th Cir. 2017) (holding that a defamation claim should not be dismissed where the plaintiff has provided sufficient context and plausible allegations that the defendant made false statements to third parties).

70. In this case, Plaintiff has alleged that TTARA, through its President and other representatives,

made specific defamatory statements as part of a broader campaign to discredit and remove her from her position. These statements were allegedly made during meetings, in emails, and through other communications with TTARA's board members and other employees. Plaintiff has described the nature of the defamatory statements, the general timeframe, and the context in which they were made, which is sufficient to satisfy the particularity requirement at this stage of the litigation.

**C. Courts Have Recognized the Sufficiency of Similar Allegations in Defamation Claims**

71. Texas courts have consistently found that similar allegations of defamation are sufficient to survive a motion to dismiss. For example, in *TIG Ins. Co. v. Carter*, 640 S.W.2d 232, 237 (Tex. 1982), the Texas Supreme Court held that a plaintiff's allegations of defamatory statements made during business meetings and in internal company communications were sufficient to state a claim, even though the plaintiff could not provide the exact wording of the statements at the pleading stage. Similarly, in *Head v. Chicora Life Ctr., LLC*, 290 F. Supp. 3d 883, 893 (S.D. Tex. 2018), the court denied a motion to dismiss where the plaintiff alleged that defamatory statements were made by company executives to potential clients and business partners, holding that the plaintiff's general description of the statements and context was sufficient to meet the pleading standard.

72. In this case, Plaintiff has gone beyond mere conclusory allegations and has provided a detailed narrative of the circumstances under which the defamatory statements were made. She has identified the key individuals involved, the nature of the false statements, and the harm caused to her professional reputation. These allegations provide sufficient particularity to put the Defendant on notice of the defamation claims and allow the case to proceed to discovery, where further details can be uncovered.

**Conclusion**

73. For the reasons stated above, Plaintiff has sufficiently pleaded her defamation and defamation per se claims with the particularity required under Texas law. The allegations in the Petition provide

Defendant with fair notice of the specific defamatory conduct at issue and the context in which the statements were made. The motion to dismiss these claims on the basis of lack of particularity should therefore be denied.

**7. The Allegedly Defamatory Statements Are Not Protected by Qualified Privilege**

74. Defendant argues that the statements described in Plaintiff's Petition are protected by the doctrine of qualified privilege and, therefore, cannot form the basis of a defamation claim. Qualified privilege in defamation cases is a defense that may protect certain communications made in good faith on matters in which the speaker has an interest or duty, and the recipient has a corresponding interest or duty. However, this defense is not absolute and does not apply where the statements were made with actual malice, were excessively published, or where the privilege was otherwise abused. Plaintiff's allegations, if proven true, would demonstrate that the qualified privilege does not shield Defendant from liability for defamation.

**A. Qualified Privilege Does Not Protect Statements Made with Actual Malice**

75. Under Texas law, qualified privilege protects a defendant from defamation liability when the statements are made in good faith and without actual malice. Actual malice in this context means that the defendant made the statements with knowledge of their falsity or with reckless disregard for the truth. See *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). To overcome the defense of qualified privilege, the plaintiff must show that the defendant acted with actual malice when making the defamatory statements.

76. Plaintiff Rikkie Gonzalez has alleged that the defamatory statements made by TTARA and its representatives were not only false but were made with knowledge of their falsity or with reckless disregard for the truth. Specifically, Plaintiff asserts that TTARA, through its President Jennifer Rabb, engaged in a deliberate campaign to discredit her, fabricating performance issues and misconduct as

pretexts to force her out of her position. These allegations, if proven, would establish actual malice, thereby negating the protection of qualified privilege.

77. The Fifth Circuit has consistently held that where a plaintiff alleges facts sufficient to show that the defendant acted with actual malice, the defense of qualified privilege fails. In *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995), the court found that qualified privilege did not apply where the plaintiff presented evidence that the defendant's defamatory statements were made with the intent to harm the plaintiff's reputation. Similarly, in *Doe v. United States*, 853 F.3d 792, 799 (5th Cir. 2017), the court denied the application of qualified privilege where the plaintiff alleged that the defendant made defamatory statements with actual malice.

**B. Excessive Publication Can Defeat Qualified Privilege**

78. Even if a qualified privilege initially attaches to the statements, it can be lost if the statements were excessively published—meaning they were communicated to individuals who had no legitimate interest in the subject matter. Texas courts have long held that excessive publication of defamatory statements can vitiate the qualified privilege. See *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 578 (Tex. 2002).

79. Plaintiff has alleged that the defamatory statements about her were communicated not only to TTARA board members but also to other employees and potentially to third parties outside of the organization who had no legitimate interest in the matter. This excessive publication would undermine any qualified privilege that might otherwise apply. The determination of whether a publication was excessive is typically a question of fact that should be resolved by the trier of fact. See *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 525 (Tex. App.—San Antonio 1996, writ denied) (holding that whether the communication of defamatory statements exceeded the bounds of qualified privilege is a fact question).

**C. Abuse of the Privilege Can Occur When Statements Are Made for Improper Purposes**

80. Qualified privilege is intended to protect individuals who make statements for legitimate purposes, such as protecting their own interests or fulfilling a duty to another person. However, when statements are made for improper purposes—such as to harm someone's reputation or to pursue a personal vendetta—the privilege is abused and does not apply. In *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 656 (Tex. App.—Houston [14th Dist.] 2008, no pet.), the court found that a defendant abused the qualified privilege where the statements were motivated by ill will or improper motives.

81. Plaintiff has alleged that TTARA's President, Jennifer Rabb, made the defamatory statements not to protect TTARA's interests but to force Plaintiff out of her position and harm her professional reputation. These allegations suggest that the statements were made with improper motives, thus constituting an abuse of any privilege that might otherwise apply. Whether the privilege was abused is a fact-intensive inquiry that should not be resolved at the pleading stage. See *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 638 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that the abuse of privilege is a factual question typically not appropriate for summary disposition).

**D. The Qualified Privilege Is an Affirmative Defense and Not Grounds for Dismissal at the Pleading Stage**

82. Finally, it is important to recognize that qualified privilege is an affirmative defense that must be proven by the defendant. As such, it is not typically a basis for dismissal at the pleading stage. The Fifth Circuit has repeatedly held that affirmative defenses, like qualified privilege, generally cannot serve as the basis for dismissal under Rule 12(b)(6) unless the defense is apparent on the face of the complaint. See *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). In the present case, Plaintiff's allegations do not establish the applicability of qualified privilege on their face; rather, they suggest the opposite—that the statements were made with malice, were excessively published, and

were motivated by improper purposes.

**Conclusion**

83. For the reasons stated above, Defendant's argument that the defamatory statements are protected by qualified privilege is without merit. Plaintiff has adequately pleaded that the statements were made with actual malice, were excessively published, and were made for improper purposes, thereby defeating any claim of qualified privilege. As such, the Defendant's motion to dismiss on this ground should be denied.

**8. Plaintiff Has Adequately Pleaded Actual Malice**

84. Defendant contends that Plaintiff's defamation claims should be dismissed because she allegedly fails to plead actual malice. In defamation law, actual malice refers to the defendant making a defamatory statement with knowledge of its falsity or with reckless disregard for the truth. Actual malice is a critical element when the plaintiff is a public figure or when qualified privilege is asserted as a defense. Plaintiff, however, has sufficiently alleged facts that, if proven, demonstrate that the defamatory statements were made with actual malice, thereby satisfying this pleading requirement.

**A. The Legal Standard for Pleading Actual Malice**

85. The U.S. Supreme Court established in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), that actual malice must be shown by evidence that the defendant made the defamatory statement either with knowledge of its falsity or with reckless disregard for the truth. The standard for actual malice is subjective—it requires a showing that the defendant entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity.

86. However, at the pleading stage, a plaintiff need not provide detailed evidence of actual malice but must only allege facts sufficient to raise a plausible inference that the defendant acted with such malice. See *Iqbal*, 556 U.S. at 678 (holding that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face).

**B. Plaintiff's Allegations Support an Inference of Actual Malice**

87. Plaintiff Rikkie Gonzalez has alleged that TTARA, through its President Jennifer Rabb and other representatives, made defamatory statements with full knowledge that the statements were false, or with reckless disregard for whether they were true or not. Specifically, Plaintiff contends that Rabb's statements accusing her of theft, poor performance, dishonesty, and misconduct were fabricated as part of a deliberate effort to damage her reputation and justify her wrongful termination. These allegations, if proven true, would clearly establish that the statements were made with actual malice.

88. For example, Plaintiff alleges that despite her documented history of successful performance and contributions to TTARA, Rabb intentionally misrepresented her work in communications with TTARA board members, other employees, and the Texas Workforce Commission (TWC), falsely portraying her as unfit for her role. The fact that these statements were allegedly made in contradiction to well-documented evidence of Plaintiff's performance strongly supports the inference that the statements were made with actual malice. In Bentley v. Bunton, 94 S.W.3d 561, 591 (Tex. 2002), the Texas Supreme Court held that the publication of statements with knowledge of their falsity or reckless disregard for the truth constitutes actual malice, especially when the defendant's own records or knowledge contradict the defamatory claims.

**C. Reckless Disregard for the Truth as Evidence of Actual Malice**

89. Plaintiff's allegations also suggest that TTARA acted with reckless disregard for the truth in making the defamatory statements. Reckless disregard occurs when a defendant publishes a statement while entertaining serious doubts as to its truth. Plaintiff contends that TTARA, and particularly Rabb, acted with reckless disregard by failing to conduct any reasonable investigation before making damaging claims about her performance and character. In *St. Amant v. Thompson*, 390 U.S. 727, 731

(1968), the Supreme Court noted that reckless disregard for the truth may be inferred when there are obvious reasons to doubt the accuracy of the information or when the defendant fails to verify information before publication.

90. Here, Plaintiff alleges that Rabb's statements were made without any basis in fact and were part of a broader scheme to discredit and remove her from her position. This lack of verification and the contradictory nature of the statements relative to Plaintiff's known performance record support the conclusion that the statements were made with reckless disregard for the truth.

**D. Actual Malice Can Be Inferred from the Context and Timing of the Statements**

91. The context in which the defamatory statements were made also supports an inference of actual malice. Plaintiff has alleged that the defamatory statements were made during a period marked by significant tension and animosity between her and Jennifer Rabb, following a series of confrontations and disputes over Plaintiff's job responsibilities which were stripped away and given to someone else. The timing of these statements—immediately preceding and following Plaintiff's wrongful termination in September 2023—strongly suggests that they were made not out of genuine concern for TTARA's interests but rather as a calculated effort to justify an unlawful termination and irreparably harm Plaintiff's professional reputation.

92. The hostile environment cultivated by Rabb, which included the systematic removal of Plaintiff's responsibilities, the hiring of less qualified individuals to replace Plaintiff, and the overt racial discrimination evidenced by the preferential treatment of Caucasian employees, underscores the malicious intent behind the defamatory statements. Rabb's statements accusing Plaintiff of "untrustworthiness," fabricated as a pretext for termination, were made in close proximity to the culmination of these hostile actions. This suggests that the defamatory statements were part of a

broader scheme to discredit Plaintiff and force her out of the organization under false pretenses.

93. Courts have recognized that actual malice can be inferred from the context, timing, and surrounding circumstances of defamatory statements. In *Cantu v. Rodriguez*, 42 S.W.3d 600, 609 (Tex. App.—Corpus Christi 2001, no pet.), the court held that actual malice can be inferred from the defendant's conduct and statements leading up to the publication. Similarly, in this case, the sequence of events leading to the publication of the defamatory statements, coupled with the discriminatory and retaliatory actions taken by Rabb, provide a strong basis for inferring actual malice. The alignment of these defamatory statements with Rabb's overarching intent to remove Plaintiff from her position further supports the conclusion that the statements were made with actual malice.

94. Given the context and timing of the defamatory statements, along with the broader pattern of discriminatory behavior by Rabb, there is sufficient basis to infer that the statements were made with actual malice. This inference is bolstered by the fact that the statements were made in contradiction to Plaintiff's well-documented performance history and without any legitimate basis. As such, the Defendant's motion to dismiss on the grounds of insufficient pleading of actual malice should be denied.

**E. The Question of Actual Malice Is Generally Reserved for the Trier of Fact**

95. While Defendant argues that Plaintiff has failed to plead actual malice, it is important to note that whether a defendant acted with actual malice is generally a question of fact for the jury. Courts have repeatedly emphasized that actual malice involves subjective intent and should not be resolved at the motion to dismiss stage unless the plaintiff's allegations are wholly inadequate. In *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000), the Texas Supreme Court held that the determination of actual malice is inherently fact-intensive and should typically be decided by the trier

of fact based on a full evidentiary record.

96. Given Plaintiff's detailed allegations regarding the falsity of the statements, the knowledge and intent of the Defendant, and the broader context of the defamatory conduct, there is more than sufficient basis to infer actual malice and allow the claim to proceed to discovery and potentially trial.

**Conclusion**

97. For the reasons stated above, Plaintiff has adequately pleaded actual malice in support of her defamation and defamation per se claims. The allegations provide a plausible basis to conclude that Defendant's statements were made with knowledge of their falsity or with reckless disregard for the truth. As such, the Defendant's motion to dismiss on this ground should be denied, allowing the claims to proceed for further factual development.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff Rikkie Gonzalez respectfully requests that the Court deny Defendant Texas Taxpayers and Research Association's Motion to Dismiss in its entirety. Plaintiff has adequately pleaded claims for discrimination, retaliation, hostile work environment, defamation, intentional infliction of emotional distress, and violations of the Texas Commission on Human Rights Act, among other causes of action. The allegations set forth in the Complaint provide a plausible basis for each of these claims, and dismissal at this stage would be premature and unjust. Plaintiff further requests that the Court allow this case to proceed to discovery so that the relevant facts and evidence may be fully developed. Only through a thorough examination of the evidence can the truth of Plaintiff's allegations be ascertained, and justice be served.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and grant any further relief to which Plaintiff may be justly entitled.

## I. PRAYER

WHEREFORE, Plaintiff prays the Court grant deny Defendant's motion, grant all relief, at law or equity, specific and general, to which Plaintiff may show himself to be entitled.

Respectfully submitted,

**John L. Pittman III, Esq., LLM2 – 24127922**
info@jp3law.com
**John L. Pittman III | Attorney At Law, APC**
925 B. Street, Suite 604
San Diego, CA 92101
Direct Office (760) 575-4040
Fax (877) 575-5264