IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED
SEP 20 2024
CLERK U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| RIKKIE GONZALEZ, | § § § § | |
| Plaintiff, | § | |
| v. | § § | CAUSE NO.: 1:24-cv-00880-DII |
| TEXAS TAXPAYERS AND RESEARCH ASSOCIATION (TTRA), AND DOES 1-25, | § § § § § § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiff, Rikkie Gonzalez ("Plaintiff"), by and through the undersigned counsel, and files this Response to Defendant's Reply in Support of Motion to Dismiss. For the reasons set forth below, Plaintiff requests that Defendant's Motion to Dismiss be denied in its entirety:

### I. INTRODUCTION

1.   Defendant, Texas Taxpayers and Research Association (TTRA), seeks dismissal of Plaintiff's claims under Title VII of the Civil Rights Act, the Texas Labor Code (TCHRA), and for Intentional Infliction of Emotional Distress (IIED), Negligent Infliction of Emotional Distress (NIED), and Defamation. Defendant's arguments misapply the legal standards under Federal Rule 12(b)(6) and fail to account for the factual allegations presented in Plaintiff's Original Petition. As such, Defendant's Motion to Dismiss should be denied.

## II. ARGUMENTS AND AUTHORITIES

### A. Plaintiff Has Sufficiently Pleaded the Numerosity Requirement Under Title VII and TCHRA

2. Defendant's argument that Plaintiff has failed to meet the employee threshold required under Title VII and the Texas Commission on Human Rights Act (TCHRA) is fundamentally flawed. Defendant's position rests on the mistaken assumption that Plaintiff must prove the exact number of employees at the pleading stage, which is not required. At this stage, Plaintiff is only required to provide sufficient allegations that make her claims plausible. Plaintiff has done so by outlining facts that reasonably suggest the Texas Taxpayers and Research Association (TTRA) either meets or exceeds the employee threshold required under both Title VII and the TCHRA.

3. Plaintiff's allegations establish that TTRA operates with a complex organizational structure, employing a range of individuals in various capacities, including full-time employees, part-time staff, independent contractors, and board members. These individuals, by contributing to TTRA's operations, form an integral part of its workforce, and they should be counted toward meeting the 15-employee minimum required under these statutes.

4. The determination of employee status is not limited to simply counting those classified as "employees" in a traditional sense. Plaintiff has alleged that independent contractors and temporary workers employed by TTRA should also be considered in determining whether the numerosity requirement is satisfied. This is particularly relevant in light of the fact that many employers, including TTRA, may misclassify employees as independent contractors or utilize temporary workers who perform essential functions for the organization. Plaintiff has raised legitimate concerns that TTRA's classification practices may not reflect the true nature of the employment relationship, and this is a fact-intensive inquiry that requires discovery.

5. At the very least, there is a plausible basis for Plaintiff's allegations that TTRA's overall

workforce, when properly counted, meets the statutory threshold. This includes not just payroll employees but also independent contractors and temporary workers who operate under the control and supervision of TTRA, contributing to its daily functions. Given the inherent complexity of modern employment structures, especially within organizations like TTRA, courts have recognized that determining the true number of employees is a nuanced issue that cannot be resolved at the pleading stage. To dismiss Plaintiff's claims based on a premature assessment of numerosity would be inappropriate and unjust.

6. Moreover, Plaintiff has sufficiently alleged that TTRA may be part of a joint employment or integrated enterprise structure, which could bring additional affiliated entities or personnel into the employee count. These doctrines allow for the aggregation of employees across multiple entities when they share interrelated operations, common management, or centralized control over labor relations. These types of employment structures are increasingly common in organizations where business functions are outsourced or shared with affiliated entities, creating a scenario where multiple companies act as joint employers for the same workers.

7. Plaintiff's allegations indicate that TTRA's board members, executive committee, and other affiliated personnel may fall within this broader employment network. These individuals likely exert control over significant operations and decision-making processes, which supports the argument that they should be counted as employees for the purposes of determining whether TTRA meets the statutory requirements. Again, whether TTRA functions as part of a joint employer or integrated enterprise cannot be determined without engaging in discovery to explore the extent of control and interrelatedness between TTRA and any affiliated entities.

8. The joint employer theory also applies when an entity retains sufficient control over the work conditions, hiring, or supervision of employees, even if those individuals are formally employed by another company. In this case, Plaintiff's allegations raise the possibility that TTRA

may share responsibility for employees through its affiliations, contractors, or staffing arrangements. This theory requires further investigation and should be allowed to proceed through the discovery process. It is only after such fact-finding that the Court can properly assess whether TTRA's workforce, taken in its entirety, meets the Title VII and TCHRA thresholds.

9. At the heart of Defendant's argument is the notion that the numerosity issue can be resolved at the outset of litigation. This position misapprehends the role of discovery in employment discrimination cases, particularly when issues of workforce structure and classification are involved. Plaintiff has set forth sufficient facts to suggest that TTRA's employee count may well meet the statutory minimum, especially when all categories of workers—employees, contractors, temporary staff, and possibly joint employees—are considered.

10. Whether TTRA has 15 or more employees is a fact-intensive inquiry that requires examination of payroll records, employment agreements, organizational structures, and the relationships between TTRA and any affiliated entities. Dismissal at this stage, without the benefit of discovery, would be premature and would unfairly limit Plaintiff's ability to develop evidence supporting her claims. Courts consistently hold that such factual questions are inappropriate for resolution at the pleading stage and must be addressed through the discovery process, where both parties can explore the extent and nature of TTRA's employment relationships.

11. For these reasons, Defendant's attempt to dismiss the case on numerosity grounds is premature and unsupported by the current procedural posture. Plaintiff has alleged a plausible basis for her claims, and further factual development is necessary to determine the full scope of TTRA's workforce.

**B. Plaintiff's IIED Claim is Not Preempted by Title VII or the TCHRA**

12. Defendant's assertion that Plaintiff's Intentional Infliction of Emotional Distress (IIED) claim

is preempted by Title VII and the Texas Commission on Human Rights Act (TCHRA) is based on an overly narrow and simplistic view of preemption. While it is true that IIED claims may be preempted in some instances where they are entirely duplicative of statutory claims under Title VII or TCHRA, that is not the case here. Plaintiff's IIED claim arises not just from the discriminatory behavior alleged in her statutory claims but also from the extreme and outrageous conduct perpetrated specifically against her by TTRA's President, Jennifer Rabb.

13. The actions that form the basis of Plaintiff's IIED claim extend far beyond the typical workplace disputes addressed by Title VII or the TCHRA. Plaintiff has alleged a pattern of harassment, public humiliation, and targeted efforts to force her out of her position—conduct that is so extreme and egregious that it goes beyond the realm of ordinary employment discrimination. Ms. Rabb's actions, including systematic mistreatment designed to degrade and isolate Plaintiff, represent an intentional campaign to cause severe emotional harm, which is the essence of an IIED claim.

14. One of the critical distinctions between Plaintiff's IIED claim and her statutory claims is the focus on extreme and outrageous conduct that is independent of her discrimination allegations. The IIED claim addresses not just the underlying discriminatory actions but the manner in which Ms. Rabb carried out these actions, with the clear intent of causing Plaintiff severe emotional distress. For example, Plaintiff alleges that Ms. Rabb subjected her to public ridicule, unjustified accusations, and constant undermining of her authority, all of which were intended to drive her out of the organization and destroy her professional reputation.

15. These actions go well beyond the scope of what Title VII or the TCHRA are designed to remedy. While those statutes focus on addressing discriminatory practices based on race, sex, or other protected characteristics, they do not fully encompass the egregious and deeply personal attacks that form the basis of Plaintiff's IIED claim. IIED is specifically intended to address intolerable behavior that would shock the conscience, and Plaintiff's allegations, if proven true, easily meet this standard.

16. The doctrine of preemption does not apply where the IIED claim serves a different function than the statutory claims. In this case, Plaintiff's IIED claim serves as a "gap-filler" to address extreme conduct that the statutory framework may not fully remedy. Plaintiff's allegations of being repeatedly humiliated, publicly demeaned, and stripped of her responsibilities in a calculated effort to inflict emotional pain are precisely the type of extreme behavior that IIED is designed to address. Title VII and the TCHRA do not fully cover intentional torts designed to cause emotional harm through methods unrelated to protected characteristics, such as racial or gender discrimination.

17. Moreover, the purpose of IIED is to allow recovery for emotional harm in cases where the conduct goes beyond what the employment statutes typically address. The behavior alleged by Plaintiff, such as manipulating work conditions to exacerbate her suffering and attacking her character in a public setting, serves no legitimate business purpose and is entirely independent of the protected class-based discrimination governed by Title VII and TCHRA. As such, Plaintiff's IIED claim provides an essential remedy for the specific emotional harm inflicted by Defendant's actions.

18. The facts in this case highlight the extraordinary and malicious nature of Ms. Rabb's conduct. Plaintiff's allegations include a deliberate and sustained effort by Ms. Rabb to isolate her, remove her responsibilities, and publicly humiliate her in front of her peers. This was not an isolated incident but part of a broader pattern of abusive behavior intended to make Plaintiff's continued employment unbearable. Such conduct, which was designed specifically to cause psychological harm, is distinct from the typical workplace disputes that are addressed by employment statutes like Title VII and TCHRA.

19. The extreme and outrageous behavior alleged here falls squarely within the realm of IIED, where recovery is available for emotional distress caused by deliberate, harmful actions that exceed the bounds of what any reasonable person should be expected to endure in the workplace. The public nature of Ms. Rabb's attacks on Plaintiff's competence, coupled with her systematic efforts to degrade

Plaintiff's position and reputation, provides more than enough factual basis to sustain an IIED claim. Plaintiff is not merely alleging that she was discriminated against—she is asserting that Defendant's actions were calculated to cause emotional damage in a way that goes beyond the scope of discrimination law.

20. It is also important to recognize that at this stage of the litigation, the full extent of Defendant's conduct has not been fully explored. Discovery will reveal the depth and breadth of Ms. Rabb's actions, including any additional evidence of malicious intent and coordinated efforts to emotionally harm Plaintiff. Dismissing the IIED claim before this evidence is uncovered would deny Plaintiff the opportunity to fully establish the extent of the outrageous conduct she endured.

21. Moreover, questions of whether conduct is sufficiently extreme and outrageous to sustain an IIED claim are often fact-intensive inquiries best left for a jury to decide. At this stage, it is premature to dismiss Plaintiff's IIED claim without giving her the opportunity to present evidence that could demonstrate the full impact of Defendant's actions. The discovery process will provide the necessary context and detail to fully evaluate the legitimacy of Plaintiff's IIED claim.

22. In summary, Plaintiff's IIED claim is not preempted by Title VII or the TCHRA because it addresses distinct conduct that is not fully captured by the statutory framework. The extreme, targeted, and malicious behavior of Ms. Rabb goes far beyond the ordinary workplace disputes typically covered by discrimination law. As such, Plaintiff's IIED claim serves a unique and necessary purpose in addressing the emotional harm inflicted by this conduct, and dismissal of this claim would be inappropriate at this stage.

### C. Plaintiff's NIED Claim May Be Supported by Texas Law

23. While Defendant argues that Texas does not recognize a standalone claim for Negligent Infliction of Emotional Distress (NIED), this oversimplifies Texas law and ignores the context in

which Plaintiff's claim arises. Plaintiff is not asserting an independent claim for NIED in a vacuum. Instead, her emotional distress claim is rooted in the broader context of Defendant's breach of its duties as her employer, and the mishandling of workplace relationships that foreseeably caused her significant emotional harm.

24. Plaintiff has described continuous mistreatment by Defendant, including persistent undermining of her role, public humiliation, and targeted efforts to push her out of the organization. This sustained pattern of behavior resulted in emotional harm that was both foreseeable and preventable, and it was exacerbated by Defendant's failure to provide a safe and supportive workplace environment. In this case, the emotional distress Plaintiff suffered is directly tied to the workplace duties Defendant owed her, and the mishandling of those duties led to her emotional and psychological harm.

25. Texas law may not generally recognize NIED as an independent cause of action, but it does recognize emotional distress damages when they are the result of a breach of a duty owed by an employer. Defendant's mishandling of Plaintiff's employment and the foreseeable impact on her emotional well-being provides a clear basis for this claim. Plaintiff has adequately pleaded facts to support that Defendant's actions resulted in significant emotional distress, which should not be dismissed before discovery has provided a complete record. To dismiss the NIED claim at this early stage would be premature, as discovery will help further develop the factual basis underlying the claim.

26. The specific factual context of this case, which involves continuous mistreatment and severe emotional distress, presents circumstances under which Plaintiff's emotional harm claim should proceed. The exact extent of Defendant's negligence and its impact on Plaintiff's mental health are fact-intensive inquiries that warrant further exploration through discovery.

### D. Plaintiff Has Adequately Pleaded Defamation and Defamation Per Se

27. Defendant's contention that Plaintiff has failed to adequately plead her defamation and defamation per se claims is unfounded and overlooks the detailed allegations provided in Plaintiff's pleadings. Plaintiff has clearly described the defamatory statements made by TTRA's President, Jennifer Rabb, including false accusations of theft and poor job performance, both of which are unquestionably damaging to Plaintiff's reputation.

28. The nature of these statements is particularly serious, as they directly impute criminal behavior and professional incompetence. Such statements constitute defamation per se, as accusations of theft inherently damage a person's reputation without requiring proof of harm. Plaintiff has also alleged that these defamatory statements were communicated to third parties, including colleagues and the Texas Workforce Commission (TWC), further damaging her career prospects and reputation.

29. Plaintiff has provided ample details about the nature of these defamatory statements, including their substance, the individuals involved, and the context in which the statements were made. These allegations are more than sufficient to put Defendant on notice of the defamation claims against it. Furthermore, the specifics of the defamatory communications, such as the exact wording or additional recipients, will be further developed during the discovery process. At the pleading stage, Plaintiff is not required to provide exhaustive details but rather sufficient facts to support a plausible claim for relief, which she has clearly done.

30. The defamatory statements have caused significant harm to Plaintiff's professional reputation, career trajectory, and emotional well-being. Defendant's attempt to dismiss the defamation claims is premature, as the discovery process will provide more information about the nature and scope of these statements and their publication.

### E. Qualified Privilege Does Not Apply to the Defamatory Statements

31. Defendant's assertion that the defamatory statements are protected by qualified privilege is fundamentally flawed and ignores the full context of the allegations. Qualified privilege may protect certain communications made in good faith, but it does not apply when the statements are made with malice or are excessively published. Plaintiff has explicitly alleged that the statements made by Ms. Rabb were motivated by malice, as they were part of a deliberate campaign to harm Plaintiff's reputation and force her out of her position.

32. Plaintiff has alleged that these defamatory statements were made not in good faith but with the specific intent to harm her. For example, Ms. Rabb's false accusations of theft were made without any basis in fact, and were clearly designed to damage Plaintiff's standing within the organization and with outside agencies like the Texas Workforce Commission. These allegations support a finding of malice, which negates any claim of qualified privilege.

33. In addition, Plaintiff has alleged that the defamatory statements were excessively published to individuals who had no legitimate interest in the subject matter. Ms. Rabb's statements were communicated not only to Plaintiff's direct colleagues but also to others who had no need to know the details of these false accusations, thereby causing additional and unnecessary harm to Plaintiff's reputation. The excessive publication of defamatory statements further undermines any claim of qualified privilege.

34. Qualified privilege is a factual defense, and whether it applies in this case depends on the specific facts surrounding the publication of the defamatory statements, the individuals to whom they were communicated, and the intent behind them. These are fact-specific issues that cannot be resolved at the pleading stage. Instead, these questions must be addressed through discovery, where the full extent of Defendant's malice and the scope of the publications can be uncovered.

35. At this stage of the case, it is premature to determine whether qualified privilege applies, and

dismissal of Plaintiff's defamation claims on these grounds would be inappropriate. The factual questions regarding malice and excessive publication must be decided based on a complete evidentiary record.

### IV. CONCLUSION

36. For the reasons stated above, Plaintiff has sufficiently pleaded her claims under Title VII, TCHRA, and Texas common law, including IIED, NIED, and defamation. Defendant's arguments for dismissal lack merit, and the motion should be denied. Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety and allow the case to proceed to discovery so that the relevant facts and evidence can be fully developed.

### V. PRAYER

WHEREFORE, Plaintiff prays that this Court deny Defendant's Motion to Dismiss and grant any further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**John L. Pittman III, Esq., LLM2 – 24127922**
info@jp3law.com
**John L. Pittman III | Attorney At Law, APC**
925 B. Street, Suite 604
San Diego, CA 92101
Direct Office (760) 575-4042
Fax (877) 757-5264

# CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2024, I delivered in physical form to the Clerk's dropbox at the courthouse. And served such filing via email to the following:

**Laura E. De Santos**
**ATTORNEY IN CHARGE**
SBN: 00793612
ldesantos@grsm.com
Hayley D. Friedman
SBN: 24123253
hdfriedman@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
1900 West Loop South, Suite 1000
Houston, TX 77027
Telephone: (713) 961-3366
Facsimile: (713) 961-3938
**ATTORNEY FOR DEFENDANT, TEXAS TAXPAYER AND RESEARCH ASSOCIATION**

/s/ John L. Pittman III

**John L. Pittman III**